# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION
## 2:06mj2-2:06cr2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| LEONARD O'BRIEN PARKER a/k/a | ) | |
| LEONARD O'BRIEN PARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER came on to be heard before the undersigned, pursuant to two motions that were filed by attorney R. Scott Kiker, attorney at law, Blue Ridge, Georgia. In the first motion Mr. Kiker requests permission to make a special appearance to present a second motion which is a motion entitled, "Motion for Reconsideration of Appointment of public Defender" which the undersigned considers as a motion requesting that the undersigned reconsider appointing counsel for the defendant. There being no objection from the government, the undersigned allowed the motion for special admission and appearance. The undersigned then heard from Mr. Kiker on behalf of the defendant in regard to the motion regarding appointment of counsel for the defendant. These proceedings took place on January 26, 2006.

**Facts:** On January 12, 2006 the undersigned issued a criminal complaint charging the defendant with the crime of bank robbery in violation of Title 18 U.S.C. § 2113(a). The criminal complaint was issued based upon factual allegations set forth in an affidavit signed by Mark M. Aysta, Special Agent for the Federal Bureau of Investigation. The defendant was thereafter arrested, pursuant to the criminal complaint and warrant. An initial appearance hearing was held in regard

to the charges against the defendant on January 13, 2006. At that time, the undersigned advised the defendant of his rights regarding counsel. The defendant requested that the undersigned consider appointing counsel to represent him due to the fact that the defendant contended that he was indigent. The undersigned required the defendant to complete a financial affidavit on a form entitled CJA-23. In the financial affidavit the defendant advised the court that he had received income within the past twelve months in the amount of $100,000.00. The defendant further advised that he had the following assets:

| Value | Item |
|---|---|
| $600,000.00 | 1st House (equity) |
| $70,000.00 | 2nd House (equity) |
| $565,000.00 | Business property (equity) |
| $100,000.00 | 1968 Ford Mustang |

The defendant further advised that he had a 1993 motor home; a 2004 Harley Davidson motorcycle; another Harley Davidson motorcycle; and a 1991 boat. In the affidavit, the defendant further advised the court that he had the following indebtedness:

| Item | Total Debt |
|---|---|
| Both Houses | $ 900,000.00 |
| Credit Cards | $ 30,000.00 |
| Business Property | $ 600,000.00 |

The defendant also advised that he had payments for child support and medical insurance.

Based upon the affidavit, the undersigned determined that the defendant was not indigent and declined to appoint counsel to represent the defendant and the undersigned further advised the defendant that he should seek to retain counsel as soon as possible.

On January 17, 2006 the defendant appeared further before the undersigned for a preliminary examination and detention hearing. At that time the defendant again advised the court that he had not retained counsel because he could not afford to hire an attorney and again contended that he was indigent. The undersigned then questioned the defendant more particularly in regard to his assets. The defendant was not placed under oath. The defendant advised the court that he had the following assets:

| Assets | Fair Market Value | Indebtedness owed | Net Value |
|---|---|---|---|
| Dwelling house | $ 1,100,000.00 | $700,000.00 | $400,000.00 |
| 2nd house | $ 300,000.00 | $228,000.00 | $ 78,000.00 |
| Business Property | $ 1,200,000.00 | $600,000.00 | $600,000.00 |
| 1968 Mustang | $ 100,000.00 | $ 0 | * $ 50,000.00 |

*(This is owned jointly with the defendant's wife)

| | | | |
|---|---|---|---|
| 2005 Chevrolet Tahoe | $ 25,000.00 | $ 36,000.00 | $(11,000.00) |

| | | | |
|---|---|---|---|
| 1993 PaceArrow Motor home | $ 15,000.00 | **$ 47,000.00 | |

** $47,000.00 indebtedness is secured by loans on the PaceArrow motor home and the following items of personal property:

| | |
|---|---|
| 2003 Harley Fatboy motorcycle | (Fair market value $9,800.00) |
| 2004 Harley 883 model motorcycle | (Fair market value $6,000.00) |
| 1991 Colby ski boat with inboard motor | (Fair market value $6,000.00) |
| 2  2003 Seadoos | (Fair market value $6,000.00) |
| Total Fair Market Value  $ 42,8000.00 | Total Net Value       $(4,200.00) |

**Defendant's Net Value                                                                $ 1,112,800.00**

The undersigned considered not only the net value of the defendant's assets, but also, particularly the asset which is described as a 1968 Ford Mustang. The defendant, upon questioning by the court, advised that he had been offered $100,000.00 for this asset in June or July of 2005. This is a readily disposal asset which is not encumbered by any debt and which was, in the opinion of the undersigned, of a value that was more than sufficient to pay for the cost of retaining counsel

to represent the defendant. As a result, the undersigned could not find that the defendant was indigent and declined to appoint counsel for the defendant.

At the hearing on January 23, 2006, Mr. Kiker presented, through proffer, statements regarding the financial resources of the defendant. Mr. Kiker advised the undersigned that the defendant had the following assets:

| Asset | Appraised Fair Market Value | Indebtedness | Net Market Value |
|---|---|---|---|
| Dwelling House | $1,120,000.00 | $ 736,564.00 | $ 364,000.00 |
| 2nd House | $ 260,000.00 | $ 232,000.00 | $ 28,000.00 |
| Business Property | $ 1,200,000.00 | $1,053,602.00 | $ 146,398.00 |

Mr. Kiker further advised the court that the defendant was the owner of either a corporation or a limited liability corporation that had filed for bankruptcy. The defendant had not filed for personal bankruptcy. Mr. Kiker also stated that the defendant had signed personal guaranties guaranteeing the indebtedness owed upon the business property in favor of Bank of America and it was Mr. Kiker's opinion that the defendant could not fund the indebtedness and therefore could not afford to pay an attorney to represent him in this matter. Mr. Kiker further stated that in his opinion that the Mustang vehicle was owned by the defendant and that from his examination that the vehicle had a fair market value of $35,000.00

**Discussion.** The standards to establish indigency and thus eligibility for the appointment of counsel are set forth in Volume VII of the Guide to Judiciary Policies and Procedures, Chapter II, Rule 2.04. That rule reads as follows:

> Standards for Eligibility. A person is "financially unable to obtain counsel" within the meaning of subsection (b) of the Act if his net financial resources and income are insufficient to enable him to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to (a) the cost of providing the person and his dependents with the necessities of life, and (b) the cost of the

defendant's bail bond if financial conditions are imposed, or the amount of the case deposit defendant is required to make to secure his release on bond.

Any doubts as to a person's eligibility should be resolved in his favor; erroneous determinations of eligibility may be corrected at a later time. At the time of determining eligibility, the judge or magistrate should inform the person of the penalties for making a false statement, and of his obligation to inform the court and his attorney of any change in his financial status. Prior to sentencing, the court should consider pertinent information contained in the presentence report, the court's intention with respect to fines and restitution, and all other available data bearing on the individual's financial condition in order to make a final determination concerning whether the individual then has funds available to pay for some or all of the costs of representation. At the time of sentencing, in appropriate circumstances, it should order the individual to reimburse the CJA appropriation for such costs. (See paragraph 2.22 E): Future earnings should not be considered or subject to a reimbursement order, however, other income or after-acquired assets which will be received within one hundred eighty days after the date of the court's reimbursement order may be available as a source of reimbursement.

Partial Eligibility. If a person's net financial resources and income anticipated prior to trial are in excess of the amount needed to provide him and his dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel, the judicial officer should find the person eligible for the appointment of counsel under the Act and should direct him to pay the available excess funds to the Clerk of the Court at the time of such appointment or from time to time thereafter. Such funds shall be held subject to the provisions of subsection (f). The judicial officer may increase or decrease the amount of such payments, and impose such other conditions from time to time as may be appropriate. With respect to the disposition of such funds, refer to paragraph 2.22 E of these Guidelines.

In considering whether the defendant is financially unable to obtain counsel, the undersigned has considered the above referenced factors. The defendant has been detained in this matter and therefore there is no cost regarding a bail/bond. The defendant's net financial resources are more than sufficient to enable him to obtain qualified counsel. The undersigned is not considering any future earnings. The undersigned has considered whether or not the defendant has partial eligibility, but his net financial resources are far in excess of the amount needed to provide the defendant and his dependents with the necessities of life and are still sufficient to pay fully for retained counsel. If only two assets of the defendant are considered, that being the dwelling house that has an

appraised fair market value of $1,120,000.00 and the Mustang vehicle which has a fair market value of $35,000.00, the defendant has a net equity in those assets of $399,000.00. Both the dwelling house and the Mustang vehicle are assets that should be easily marketable, particularly the Mustang vehicle. To appoint counsel for a defendant who has wealth such as this defendant would impose an improper burden on the United States taxpayers. As a result, the undersigned has again determined that the defendant is financially able to obtain counsel and declines to appoint counsel for the defendant in this matter.

**ORDER**

**WHEREFORE**, it is the **ORDER** of the court that the motion of R. Scott Kiker for special admission and appearance to present a motion is hereby **ALLOWED** and that the defendant's "Motion for Reconsideration of Appointment of Public Defender" which has been considered as a motion for appointment of counsel is hereby **DENIED**.

Signed: February 2, 2006

Dennis L. Howell
United States Magistrate Judge