# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:06CR2

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **LEONARD O'BRIEN PARKER.** ) | |
| _____ ) | |

**THIS MATTER** is before the court upon defendant's Motion For Jackson V. Denno Hearing and to Suppress (#29). On August 22, 2006, a hearing was conducted in Asheville, at which the United States called Special Agent Christopher Lando, Federal Bureau of Investigation, and moved into evidence Agent Lando's official report of his interview of defendant, the FBI "302." Defendant was present at such hearing and represented by counsel.

Because each issue raised and argued by defendant may be resolved by reference to current case law, the undersigned will not recount in great detail the evidence presented, but will instead summarize the relevant testimony. The undersigned hereby incorporates all such testimony by reference to the official FTR recording.

## FINDINGS AND CONCLUSIONS

**I.   Background**

Defendant is charged in a 10 count Bill of Indictment with two counts of bank robbery, two counts of assault with a dangerous weapon, two counts of kidnaping, two counts of use of a firearm during the commission of a crime of violence, and two counts of

possession of a firearm by a convicted felon. The alleged offenses occurred on or about January 3, w006, and January 11, 2006.

The day after the second bank robbery, January 12, 2006, defendant was apprehended in his room at the Harrah's Cherokee Casino by officers of the Cherokee Indian Police Department. Defendant's Motion, Ex. A., at 1. Agent Lando testified that defendant had been arrested at approximately 10 a.m. and that his interview commenced at 11:04 a.m. in the Breathalyzer room of the Cherokee Indian Police Department.

At the commencement of the interview, Agent Lando inquired concerning defendant's educational achievement and was advised by defendant that he had received a two-year degree from a college, that English was his primary language, and that he took no medicines and had no medical problems that would prohibit him from understanding his rights. Id. Agent Lando testified that defendant advised him that he took the prescription drugs PAXIL[1] and SOMA.[2] After satisfying himself that defendant was competent to proceed with an interview, Agent Lando advised defendant of his rights throughout the use of a standard Advice of Rights form, by reading each right to defendant, who initialed each right and

---

[1] According to the *Physician's Desk Reference,* "PAXIL (paroxetine hydrochloride) is an orally administered psychotropic drug." Review of the *PDR* reveals no adverse interaction warning for either nicotine or caffeine.

[2] According to the *Physician's Desk Reference*, "Carisoprodol [SOMA] is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomfort associated with acute, painful musculoskeletal conditions." Review of the *PDR* reveals no adverse interaction warning for either nicotine or caffeine

signed a waiver of such rights.

Initially, defendant provided Agent Lando with a detailed account of his activities the previous day. Agent Lando then informed him that his activities at the Cherokee Casino the previous day were not the issue, rather, he was being questioned concerning a bank robbery that had occurred in Murphy, North Carolina. When so advised, defendant responded, "if you have bank robbery charges, go ahead and charge me," at which point Agent Lando responded "we have." Id., Ex. A, at 2. Defendant then stated that he was traveling to Atlanta that day and he was almost always on his cell phone when driving. Id. When asked what his cell phone would show as to the towers he was in, defendant advised that it would show him traveling through Murphy, Blue Ridge, Morganton, Young Harris, and Jasper. Id. When asked why he had taken such a long route home, defendant advised that he was headed to visit an RV dealer in Murphy, but then stated he did not got there.

Agent Lando then shifted his questioning to a bank robbery that had occurred on January 3, 2006, in Cornelius, North Carolina, which is near Charlotte. Defendant responded that he had last been in Charlotte on the Thursday after New Years Day, 2006, which was January 5, 2006. At that point, which was 20 minutes into the interview, defendant asked for and received a second cup of coffee.

Agent Lando then asked defendant if he could recall exact dates when he was in Charlotte and at the Cherokee Casino in the last two weeks. After stating that he could not recall, defendant stated "if your gonna charge me, charge me and I'll get my attorneys." Id.,

Ex. 2, at 3. Agent Lando then asked defendant again if he wanted an attorney, to which defendant responded that he had guns pointed at him (during the arrest by Cherokee Police) and he had been scared to death. Id. Agent Lando then again asked defendant if he wanted an attorney, and defendant pointed to a Cherokee Police Department telephone located in the room and asked "can I use the phone to call my attorney?" Agent Lando advised "No," and told defendant the interview was over. Id. Agent Lando testified that he told defendant "no" because the phone did not belong to him, and he had no authority to allow defendant to place a call that might result in long distance charges.

Agent Lando, considering the interview over, took steps to make copies of the arrest and search warrants and to provide those to defendant. At this point, defendant asked "what will happen next," and Agent Lando described for him the initial appearance and detention hearing process. Id. Defendant then stated, "I want to talk with you," but Agent Lando advised defendant that he could not talk with him because he had requested an attorney. Defendant then stated, as follows:

> No, I didn't, I said I wanted to call my attorney. I don't want an attorney, I want to talk with you. I got stuff I want to get off my chest.

Id. Agent Lando then told defendant he did not want to infringe defendant's rights, to which defendant responded that they were his rights, he did not want an attorney, and he wanted to talk. Id. Agent Lando then gave defendant a break outdoors, where defendant smoked two cigarettes and drank his third cup of coffee.

Upon returning to the interview room, defendant was then provided an Advice of

Rights form and Agent Lando informed him that he wished to review his rights again to be sure. Defendant, referring to the advice of rights form, then stated that he had already done that and "let's go," because he knew his rights. Immediately and without questioning from Agent Lando, defendant volunteered that he had robbed the bank in Murphy. After providing Agent Lando with details concerning that robbery, Agent Lando then questioned defendant concerning the bank robbery in Charlotte, which defendant denied committing.

**II.    Defendant's Motion**

Defendant has moved to suppress his confession, arguing that Agent Lando improperly obtained it through questioning that occurred after he had invoked his right to have counsel present during such questioning. Defendant has also asserted that any confession Agent Lando obtained was involuntary, inasmuch as he supplied defendant with caffeine and nicotine, knowing defendant was on PAXIL and SOMA. Each issue will be addressed *seriatim*.

**III.   Confession Following Invocation of Right to Counsel**

It is well settled that law enforcement officers must immediately stop custodial interrogation when a defendant asserts his Miranda rights. Edwards v. Arizona, 451 U.S. 477 (1981). To determine whether a defendant who initially asserted his right to counsel under Miranda has thereafter validly waived that right, a two-part inquiry is required, by asking:

(1)    Did the defendant in fact assert his rights? And, if so

(2)    Do subsequent events indicate that the defendant

> (a) voluntarily initiated conversations with the police concerning the crime under investigation? And, if so
>
> (b) did defendant make a knowing and intelligent waiver of his rights under the totality of the circumstances, including the background, experience, and conduct of the defendant and the conduct of the police?

Edwards, supra.

As to the first inquiry, and having reviewed all the evidence presented, it would appear that defendant asserted his rights to counsel during the course of the interview by asking to use a phone to call his attorney.

> We agree with the magistrate that Hoskins' statement that he wanted to speak with an attorney was sufficient under *Edwards* to invoke the protection of the sixth amendment.

Hoskins v. Huffman, 1988 WL 105282, *3 (4th Cir. 1988).[3]

As to the second inquiry, defendant "surrendered the right to be free from questioning by initiating later conversation with the officers." Id. As to inquiry 2(a), not only did defendant initiate conversation, he frustrated Agent Lando's attempt to re-advise him of his rights and then, without prompting or questioning from Agent Lando, volunteered that he had robbed the bank in Murphy. In conducting a totality of the circumstances analysis, and considering the background, experience, and conduct of the defendant as well as Agent Lando, it appears that defendant was a well educated business person, who had previous dealings with law enforcement on felony offenses. Defendant reinitiated conversations with

---

[3] Due to the limits of electronic case filing. A copy of such unpublished decision is incorporated herein by reference to the Westlaw citation.

Agent Lando, insisted that he knew his rights, and that he was insistent on making a confession in that he said "lets go" when Agent Lando attempted to re-explain the Miranda warnings. Considering Agent Lando's conduct, it was exemplary, with Agent Lando doing precisely what the case law has sought - - "scrupulous honoring" rights asserted. Michigan v. Mosley, 423 U.S. 96, 104 (1975)(officers must scrupulously honor assertions of the right to remain silent).

This case is little different than Hoskins, where the Court of Appeals for the Fourth Circuit concluded, as follows;

> Hoskins "evinced a willingness and a desire"--indeed demanded--to discuss his case with the officers, and any statements he made during the ensuing discussion, whether or not they were in response to questions asked by the officers, were properly admissible.

Hoskins, supra, at *4. Indeed, under Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983), defendant simply asking "what would happen next" would have "evinced a willingness and a desire for a generalized discussion about the investigation." Id., at 1045-46.

Based on a totality of the circumstance, defendant voluntarily initiated conversations with the police concerning the crime under investigation and then made a knowing and intelligent waiver of his rights under the totality of the circumstances. Finding no merit to defendant's motion as it relates to his confession following invocation of his right to counsel, the undersigned will respectfully recommend that such Motion to Suppress be denied.

IV. **Voluntariness of Confession**

A defendant may waive his Miranda rights where he does so "knowingly and voluntarily." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In determining whether defendant herein waived his Miranda rights, the court must look to the "totality of the circumstances." Moran v. Burbine, 475 U.S. 412, 421 (1986). In making such assessment of whether the waiver was "knowing," courts ask whether defendant had "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. As to whether such waiver was "voluntary," courts ask whether the defendant's statement was "the product of a free and deliberate choice [or the result of] intimidation, coercion, or deception." Id.

The government has shown by a preponderance of the evidence that defendant's waiver of his Miranda rights was both knowing and voluntary. After discerning that defendant was not impaired by any medical condition or medication he was taking, and after determining defendant's educational level and that defendant spoke English, Special Agent Lando read each right to defendant, stopping to ask if he understood each right as it was read. As to voluntariness, there was absolutely no evidence of intimidation, coercion, or deception.

Defendant appears to argue that because of his underlying mental health issues, his taking of prescribed medication, and Agent Lando's provision of coffee and allowance of defendant to smoke outdoors, defendant's waiver and subsequent confession was not the product of free and deliberate choice. At the hearing, the court asked counsel whether they

had any cases indicating that it was improper to allow a defendant in an interview access to cigarette and coffee, and counsel stated no, but that it was the combination of those stimulants with his prescription drugs that made the waiver and confession involuntary. Defendants failed to provide the court with citations to any medical reference or learned treatise to support such argument, but instead referenced cases that were earlier cited to the district court in an *ex parte* motion for appointment of a psychiatric expert, which the district court denied, inasmuch as defendant was not indigent.[4] Inasmuch as defendant failed to provide the court with any references, the court has relied on the *Physician's Desk Reference* and determined that neither PAXIL nor SOMA carry caffeine or nicotine warnings.

The question is not whether coffee and cigarettes are contra-indicated for PAXIL and SOMA, but whether on January 12, 2006, defendant had the ability to make rational decisions. There is absolutely no prohibition on interviewing agents extending common courtesies to those they may question or allowing them opportunities for "smoke breaks." In the most analogous case the undersigned can find, a magistrate judge found, as follows:

> Finally, Fleming contends that his confession was involuntary because drugs were interfering with his ability to make rational decisions at the time he spoke with the Madison detectives. At the evidentiary hearing, Fleming testified that he had been smoking crack most of the night before he was interviewed by the Milwaukee and Madison detectives. Apparently, detention in the house of corrections was no barrier to obtaining or consuming controlled substances. It is not clear from Fleming's turbid testimony whether he is claiming that he was still high on crack, was withdrawing from crack, or both. Fleming also throws into the mix the nicotine buzz he achieved from chain-

---

[4] In a later hearing, counsel for defendant admitted in open court that defendant had paid his attorneys $60,000.00 for pretrial representation in this matter.

smoking the detectives' cigarettes all day. If Fleming's admissions are true, then the combination of crack and nicotine could have left him frothy-headed on November 24, 1998.

I cannot determine whether Fleming actually binged on crack at the jail as he claims, but I have determined two other material facts: Fleming was not high or in withdrawal when he spoke to the detectives, and the detectives did not engage in any coercive activity that could have overborne Fleming's will, whether he was at full strength or running on fumes. These findings dispose of Fleming's claim.

A confession is voluntary if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will. *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir.1997). Among the factors relevant to this inquiry are the nature and duration of the questioning used, whether the defendant was prevented from eating or sleeping and whether the defendant was under the influence of drugs or alcohol. *Id.* Also relevant are the defendant's personal characteristics, such as age, intelligence, education, mental state, experience in the criminal justice system, and whether the person has been provided with advice of his rights. *Id.; United States v. Brooks*, 125 F.3d 484, 492 (7th Cir.1997). Absent some showing of some type of official coercion, however, a defendant's personal characteristics alone are insufficient to render a confession involuntary. *Id., quoting Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Thus, although drug intoxication is a relevant circumstance in the voluntariness equation, it cannot by itself establish coercion; it merely has the potential to make the suspect more susceptible to coercive interrogation techniques. *See United States v. Montgomery*, 14 F.3d 1189, 1195 (7th Cir.1994). So, if the detectives had reason to know that Fleming was high, then this court could find that an otherwise legally inconsequential level of coercive behavior was unacceptable under the circumstances. *Id.*

United States v. Fleming, 2001 WL 34381108, *6 (W.D.Wis. 2001). The magistrate judge

went on to find that

The evidence does not establish that Fleming's loquacity on November 24, 1998 was induced by crack, nicotine, caffeine, or something else. To the contrary, Fleming was consciously controlling his fate in a rational manner: he floated the notion of consolidating his current and looming state and federal

charges in one package deal, and he agreed to provide specified information off the record. Fleming's handling of these issues demonstrated his ability at the time to make discerning choices based on his assessment of his interests.

Id. (footnote omitted).

The decision of the district court in Fleming is consistent with the decisions of the Court of Appeals for the Fourth Circuit, which has held, as follows:

> The fact that Cristobal had been given pain killers and narcotics such as morphine is not enough to render his waiver involuntary. In making a determination on whether one's will has been overborne, we certainly must take into consideration "the characteristics of the defendant." However, a deficient mental condition (whether the result of a pre-existing mental illness or, for example, pain killing narcotics administered after emergency treatment) is not, without more, enough to render a waiver involuntary. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."
> Because we cannot look to mental condition alone when determining the voluntariness of Cristobal's waiver, we must ultimately focus on the actions of the law enforcement officials to determine if police overreaching occurred in this case.

United States v. Cristobal, 293 F.3d 134, 141 (4th Cir. 2002)(citations omitted).

As did the appellate court in Cristobal, the focus is not on defendant's mental condition, but whether law enforcement exploited any weakened mental condition through coercive tactic. Id. Not only is there no evidence of Agent Lando employing any coercive or exploitative tactics, the evidence is undisputed that Agent Lando scrupulously advised defendant of his rights, immediately stopped the interview when he suspected that defendant had asserted his right to counsel, and that Agent Lando made provision to get defendant copies of charging instruments and explain, at defendant's request, what was going to happen

next, all before defendant confessed.

In addition, the evidence presented indicates that defendant was at all times in control of his faculties, demonstrated an understanding of his rights and asserted those rights, was able to provide a number of explanations to Agent Lando concerning his whereabouts, and explained his present financial condition. Further, defendant was able to make strategic choices by confessing to the Murphy robbery, but denying any involvement with the alleged robbery in Cornelius.

Based on a totality of the circumstances, the undersigned finds that defendant's waiver of his rights as specified in <u>Miranda</u> was both knowing and voluntary. The undersigned will, therefore, respectfully recommend that defendant's Motion to Suppress statements as unknowing and involuntary be denied.

## V. Conclusion

Having considered defendant's Motion to Suppress and reviewed the pleadings, and it appearing that good cause has not been shown for the relief sought, the undersigned enters the following Recommendation.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's

Motion to Suppress (#29 be **DENIED** in its entirety.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: August 22, 2006

_____
Dennis L. Howell
United States Magistrate Judge